UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VIVIAN L. WASHINGTON, et. al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Defendant. ) <br> ) <br> ) | Civil Action No. 08-0269 (TFH) |

## RULE 16.3 REPORT

Pursuant to Local Civil Rule 16.3 and Federal Rule of Civil Procedure 26(f), the parties have conferred and submit this Rule 16.3 Report.

**1.   Likelihood This Case Will Be Disposed Of By Dispositive Motion**

Any dispositive motion will be filed following the close of discovery.

**2.   Date For Joining Other Parties**

The parties do not anticipate joining additional parties but reserve the right to join additional parties and/or amend the pleadings upon the completion of discovery. The parties do not believe that the issues in this case can be further narrowed prior to discovery.

**3.   Assignment To A Magistrate Judge**

At this time, the parties consent to referral of this case to a Magistrate Judge only for purposes of settlement discussions. Neither party consents to the assignment of this case to a Magistrate Judge for all purposes at this time, but would be willing to consider it following the close of discovery.

4. **Possibility Of Settlement**

Although no settlement negotiations have occurred as of this point, both parties are open to exploring the possibility of settlement.

5. **Alternative Dispute Resolution**

The parties believe the case would benefit from some form of ADR. Defendant believes that this case would benefit from the assignment of the case to a Magistrate Judge for settlement purposes following the informal exchange of information and following the close of formal discovery.

6. **Dispositive Motion Schedule**

The parties jointly propose that dispositive motions should be due 45 days after the close of discovery, oppositions filed 30 days thereafter, and replies filed 20 days after oppositions.

7. **Initial Disclosures**

The parties agree to exchange initial disclosures on or before July 31, 2008.

8. **Discovery**

The parties request that all discovery, including expert discovery, close on June 1, 2009. The parties propose that discovery begin with the issuance of a scheduling order and end on June 1, 2009. The parties agree to follow the Federal Rules of Civil Procedure with respect to the number of depositions (10) and interrogatories (25). Additionally, the parties agree to follow the Federal Rules of Civil Procedure with respect to requests for the production of documents (no limitation), and requests for admissions (no limitation).

9. **Expert Reports**

The parties anticipate designating expert witnesses. The parties request the following expert disclosure schedule: Plaintiffs designate expert witnesses on or before December 29,

2008; Defendant designates expert witnesses on or before March 2, 2009; and Plaintiffs designate rebuttal expert witnesses on or before April 2, 2009.

The parties agree that Plaintiffs make all 26(a)(2) disclosures 60 days prior to the close of discovery and Defendant shall make all 26(a)(2) disclosures 30 days prior to the close of discovery. Experts may be deposed up to the close of discovery.

In an effort to eliminate unnecessary and duplicative costs associated with the prosecution and defense of this medical malpractice case, Plaintiffs respectfully request that this Honorable Court waive the expert report requirement contained in Fed.R.Civ.P. 26(a)(2). Both parties' experts will be thoroughly questioned during their respective depositions. Any information concerning the experts' opinions, basis thereof, and any other relevant matter will be ascertained during the experts' respective depositions. Thus, Plaintiffs contend, it will be duplicative and expensive to require the experts to state their opinions and basis thereof in a report when those same opinions will be stated again in a deposition. The exorbitant expert fees make it costly to have experts state their opinions and basis thereof again and again. The duplicity and expense involved will be particularly injurious to the Plaintiffs because a number of medical experts are necessary for the successful prosecution of their claim. Thus, Plaintiffs respectfully request the waiver of expert reports in order to restrain the costs associated with the prosecution and defense of this inherently expensive medical malpractice case.

Defendant objects to the proposed waiver of expert reports.

10. **Class Actions**

This topic is not applicable to this case.

11. **Bifurcation Of Trial Or Discovery**

The parties do not believe that bifurcation is necessary in this action.

12. **Pretrial Conference Schedule**

The parties agree that a pretrial conference should not be scheduled until the Court has decided all dispositive motions, and until after discovery is complete. The parties jointly propose that the pretrial conference be set on July 6, 2009.

13. **Trial Date**

The parties request that the trial of this matter commence on July 13, 2009.

## STATEMENT OF THE CASE

This is a complex medical malpractice case involving severe and permanent neurological injury to Vivian L. Washington's spinal cord and other injury.

### Plaintiff's Statement of the Case:

The Plaintiffs allege that on February 23, 2005, Mrs. Washington was admitted to Walter Reed Army Medical Center to undergo spinal surgery to correct lumbar stenosis. During the surgery, the Defendant negligently caused multiple dural tears and negligently failed to detect all dural tears, negligently failed to properly seal all dural tears and otherwise negligently failed to prevent fluid from leaking from the dural tears. After surgery, fluid leaked from the dural tears. A pocket of fluid formed and pressed against Mrs. Washington's spinal nerves which caused injury to her cauda equine nerves. Mrs. Washington exhibited obvious signs and symptoms of cauda equina syndrome and other neurological injury, which required timely surgical intervention. However, the Defendant negligently failed to provide appropriate post-operative care, including corrective surgery, necessary to timely identify, diagnose and treat Mrs. Washington's neurological condition. Had the Defendant provided Mrs. Washington with the care and treatment required by the applicable standard of care, her lumbar stenosis would have been successfully treated and she would today be neurologically intact.

The Plaintiffs allege that as a result of the Defendant's negligence, Mrs. Washington sustained severe and permanent neurological injury to her spinal cord and other injury. Mrs. Washington suffers from, <u>inter alia</u>, cauda equina syndrome which leaves her with incontinence of bowel and bladder, vaginal numbness, and pain and weakness in her lower extremities. Mrs. Washington's severe and permanent neurological injury impairs her ability to perform and enjoy all activities of daily living; to obtain and maintain employment; to perform household and other services; and to independently meet her personal hygiene needs. Additionally, Mrs. Washington's permanent neurological injury has in the past and will in the future require numerous otherwise unnecessary medical and surgical interventions, physical and occupational therapy, nursing and attendant care, medical equipment, and other medical care. Further, Mrs. Washington's husband, Plaintiff James E. Washington, has suffered significant and ongoing damage to his marital relationship including loss of service, affection, companionship, consortium, and other economic and non-economic injury.

### Defendant's Statement of the Case:

Plaintiff, Vivian L. Washington, brings this case pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 et. seq. alleging malpractice in connection with complications stemming from her elective *spinal surgery for her spinal stenosis* at Walter Reed Army Medical Center (WRAMC). Plaintiff alleges the medical procedures were performed negligently and the treatment was substandard. Plaintiff's claims are without merit. Dr. Kuklo obtained informed consent from Plaintiff for the surgery performed at WRAMC. When Plaintiff was first seen at WRAMC, Dr. Kuklo discussed all of the risks and benefits of surgery with Plaintiff including the risk of bleeding, infection, neurological injury, persistent pain, loss of limb, failure for relief of back pain, stroke, pulmonary embolus, myocardial infarction, the probable need for

rehabilitation, and death. Dr. Kuklo also had Plaintiff read the Counseling statement and read and sign the Informed Consent Form. At the initial consultation, Plaintiff complained about pre-existing back pains that she had had since the 1970's. She also reported to Dr. Kuklo that she had noticed bowel and bladder difficulties in the past two weeks prior to her visit with him. It was determined that a L3, L4, L5 fusion was needed to treat her condition, lumbar stenosis. Initial surgery was performed on 23 February 2005.

During the surgery two durotomies occurred. They were immediately noted and closed by running sutures and reinforced with interrupted sutures. After the operation Plaintiff exhibited all normal bodily movements. Plaintiff was confined to bed and was told to lay flat for 24 hours due to the durotomies that had developed. During the recovery stage, Plaintiff had low blood pressure and chest pains but these were symptoms that Plaintiff had been exhibiting for some time before the operation.

On 27 February 2005 Plaintiff was without voluntary sphincter control, a sign of CES, a condition that develops when fluids cause compression on the nerves of the spinal chord. An attempt was made to drain the fluids but was not entirely successful. On 28 February 2005 a second operation was commenced to fully drain the fluids. A durotomy was discovered just north of one of the previously closed dural tears. This was closed and no further leakage was observed. A lumbar drain was installed just above the latest dural tear.

Plaintiff was instructed to lay flat so that the lumbar drain could work but would get out of bed and sit in a chair on her own. Plaintiff was reminded of the necessity to lie flat, but this behavior continued. Plaintiff was eventually released from WRAMC and sent for rehabilitation. Plaintiff showed satisfactory progress, and was released from rehabilitation on 16 March 2005. As such, the treatment and care received by Plaintiff was appropriate and well within the

standard of care for the medical industry. Records reflect that all appropriate actions and precautions were taken by the staff of WRAMC and issues were taken care of upon discovery in a timely manner. Plaintiff suffered from inadequate draining of spinal fluid due to her moving around after being told to lie flat which disrupted the draining process and the effectiveness of the lumbar drain.

Respectfully submitted,

/s/ Thomas C. Cardaro
Thomas C. Cardaro (#418330)
Jeffrey L. Peek (#470442)
C. Drew Fritch (#485704)
*Cardaro & Peek, L.L.C.*
201 North Charles Street
Suite 2100
Baltimore, Maryland 21201
202-628-7778
tcc@cardarolaw.com
*Attorneys for Plaintiffs*

/s
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

/s
RUDOLPH CONTRERAS D.C. Bar # 434122
Assistant United States Attorney

/s
Lanny J. Acosta, Jr.
Special Assistant United States Attorney
United States Attorney's Office
Civil Division
555 Fourth Street, N.W.
Washington, D.C. 20530
202-307-2332

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VIVIAN L. WASHINGTON, et al. ) | |
| ) | Civil Action No.: 08-CV-00269(TFH) |
| *Plaintiffs,* ) | |
| v. ) | |
| UNITED STATES OF AMERICA ) | |
| *Defendant.* ) | |

### SCHEDULING ORDER

Upon consideration of the Joint LCvR 16.3(d) Report and the Initial Scheduling Conference, it is this _____ day of _____, 2008, **HEREBY ORDERED** that the following dates be established for this case:

| | |
|---|---|
| Deadline for 26(a)(1) Initial Disclosures | 07/31/08 |
| Deadline for Plaintiffs' Expert Identification | 12/29/08 |
| Deadline for Defendant's Expert Identification | 03/02/09 |
| Deadline for Plaintiffs' Rebuttal Experts | 04/02/09 |
| Close of Discovery | 06/01/09 |
| Deadline to Join Additional Parties and/or Amend Pleadings | 06/01/09 |
| Status Conference | To be set by the Court |
| Deadline to finish ADR | 06/01/09 |
| Deadline to Submit Dispositive Motions | 06/08/09 |
| Pretrial Conference | 07/06/09 |
| Trial | 07/13/09 |

                                                  Hon. Thomas F. Hogan
                                                  United States District Judge

<u>Copies to:</u>

Thomas C. Cardaro, Esq.
Jeffrey L. Peek, Esq.
C. Drew Fritch, Esq.
*Cardaro & Peek, L.L.C.*
201 North Charles Street
Suite 2100
Baltimore, Maryland 21201

Jeffrey A. Taylor, United States Attorney
Rudolph Contreras, Assistant United States Attorney
Lanny J. Acosta, Jr., Special Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530